UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL GALATEANU, <br><br> Plaintiff, <br><br> v. <br><br> WILLIS SPATES, TRINA FLAKES, JASON SMILEY, DONNA MUSIK, ZACHARY NAYLOR, LIAW, <br><br> Defendants. | CAUSE NO. 3:25-CV-663-HAB-ALT |

OPINION AND ORDER

Michael Galateanu, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Galateanu alleges he arrived at the Westville Correctional Facility on November 1, 2022. Unit Team Manager (UTM) Dennis Hood asked him to "establish and facilitate the Narcotics Anonymous Program." ECF 1 at 3. Galateanu did so the next month. He subsequently "established, helped facilitate, and work[ed] for Mr. Hood as clerk, Celebrate Recovery program, Re-Entry/Book Club, Valparaiso University Inside-Out

Program, over ½ dozen different chapel services, Baptisms, Volunteer Appreciation Events, etc." *Id*. On September 20, 2023, during a cell shakedown, Officer Donna Musik allegedly began "destroying [his] property, using vulgarities, and producing swastikas visible to other offenders and volunteers, aware of [his] Jewish origin, being born in Israel." *Id*. Several doctors, graduate students, and offenders witnessed this incident. He claims the doctors who witnessed the incident communicated it to UTM Hood. He also filed his own grievance at the prompting of UTM Hood, who promised to handle the matter.

Galateanu says he was "subsequently targeted by Officers Zachary Naylor, Twiyla Harvest, Sergeant Spates, and Sergeant Flakes." *Id*. at 4. Specifically, Sergeant Spates fired him from his job at the Truss Shop. Galateanu states, "[It] was determined to be an unjustified termination, and I was given my job back with back pay, until the next time he saw that I was terminated unjustly." *Id*. He claims Officer Musik now works in healthcare, where his "healthcare needs are being ignored." *Id*. Officer Naylor now works in the warehouse, where his "commissary is being destroyed before shipped to me." *Id*. He claims he has since been moved to a "disciplinary idle dorm" where he has been placed on commissary and hygiene restriction. *Id*.

Galateanu has sued Sergeant Willis Spates, Sergeant Trina Flakes, Warden Jason Smiley, Officer Donna Musik, Officer Zachary Naylor, and Dr. Liaw for "hate crimes and violations of [his] 1st, 5th, and 14th Amendments." *Id*. at 3. He describes his requested relief as follows, "Grant my entire 730 days of CPCT time cuts promised by

2

Counselor Margarita Moore. Given medical attention. Be free from cruel and unusual punishment and retaliation. Punitive damages." *Id*. at 5.

The contours of Galateanu's claims are not entirely clear. Galateanu may be attempting to challenge the original termination of his job by Sergeant Spates. However, Galateanu has no liberty or property interest in a prison job, and being deprived of a job does not violate his procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *see also Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000). That said, the First Amendment prohibits some actions taken by state officials that are not, by themselves, illegal, but cannot be taken in retaliation for the exercise of protected First Amendment activity. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983."). To proceed on a claim for retaliation under the First Amendment, Galateanu must plausibly allege "(1) that he engaged in protected First Amendment activity; (2) that an adverse action was taken against him, and (3) that his protected conduct was at least a factor that motivated the adverse action." *Adams v. Reagle*, 91 F.4th 880, 887 (7th Cir. 2024); *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Galateanu's allegations are too vague to state retaliation claims against any of the defendants. He alleges he engaged in First Amendment protected activity by filing a grievance against Officer Musik related to the destruction of his property during a cell shakedown and the fact that she drew swastikas in the prison. *See Gomez*, 680 F.3d at

3

866 (grievance qualifies as "protected activity"). He also alleges he was subjected to an adverse action when he was fired from his job at the Truss Shop. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (losing one's source of income is an action that "would likely deter a person of ordinary firmness from continuing to engage in protected activity") (quotation marks omitted)). What Galateanu hasn't done, however, is articulate why the grievance was a motivating factor in his firing. Galateanu doesn't explain how that grievance was in any way related to Sgt. Spates, his role in overseeing Galateanu's employment, or any of his other responsibilities at the prison. In fact, he doesn't plausibly allege that Sgt. Spates even knew about the grievance or its subject matter. He speculates he was "subsequently targeted" by the various defendants after filing the grievance, but such broad conjecture isn't sufficient to state a claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.) (emphasis in original)); *see also Szymankiewicz v. Doying*, 187 Fed. Appx. 618, 622 (7th Cir. 2006) (noting that neither the "mere fact" that a prisoner was disciplined nor "unsupported speculation and conjecture about the defendants' motives" demonstrates First Amendment retaliation).

Galateanu mentions that Officer Musik now works in the medical department where his "health care needs are being ignored" and that Officer Naylor now works in the warehouse where his "commissary is being destroyed" and restricted, but these allegations are far too vague to plausibly demonstrate either an adverse action or a

4

motivating factor associated with the grievance filed. *See Adams*, 91 F.4th at 887; *see also Swanson*, 614 F.3d at 403. Because Galateanu hasn't stated any plausible First Amendment retaliation claims, they will be dismissed.[1]

Galateanu also states he is suing based on the "hate crimes" he experienced when Officer Musik used derogatory language and drew swastikas in the prison. To the extent he is seeking to criminally prosecute Officer Musik, he may not do so because there is no constitutional right to bring charges against another individual or even to force the police to investigate an alleged crime. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General."); *see also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction"). To the extent Galateanu is alleging his Eighth Amendment rights were violated based on the language and the swastikas, he hasn't stated a plausible claim either. Although the court certainly does not condone the use of inflammatory

---

[1] Galateanu doesn't describe any specific actions by any of the remaining defendants—Sergeant Flakes, Warden Smiley, and Dr. Liaw—so he hasn't stated any plausible claims against them either. *See Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.).

symbols or derogatory language in the prison disciplinary context, such "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 446 (7th Cir. 2009) (noting that the behavior of a Caucasian guard who hung a noose from the ceiling and made "crazy" eyes at an African-American inmate fell "well short" of violating the Constitution); *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Therefore, this claim will also be dismissed.

In the relief section of his complaint, Galateanu asks the court to grant him the "730 days of CPCT time cuts" promised by a counselor who is not named as a defendant in this case. He doesn't provide any additional information about this request, what led to it, who was involved, or how his rights were allegedly violated. These sparse allegations don't state a claim. *See Swanson*, 614 F.3d at 403. Moreover, to the extent he is challenging the decision related to the "time cuts," he may not do so in this civil rights action. "A state prisoner's suit challenging the computation of his sentence is a suit challenging the duration of his confinement, and therefore, the appropriate vehicle to raise such a claim in federal court is a writ of habeas corpus under [28 U.S.C.] § 2254, after exhausting state remedies." *Beaven v. Roth*, 74 F. App'x 635, 638–39 (7th Cir. 2003); *see also Studebaker v. Sevier*, No. 123CV00381JPHKMB, 2023 WL 5289581, at *1 (S.D. Ind. Aug. 17, 2023) (dismissing case where inmate alleged he

lost good time credit under the Case Plan Credit Time (CPCT) system because that type of claim cannot be brought under § 1983).

Finally, as a general matter, the court notes that Galateanu doesn't sufficiently explain how many of these allegations are connected to one another. "A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). "[U]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

This complaint does not state a claim for which relief can be granted. If Galateanu believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. He must only include related claims.

For these reasons, the court:

(1) GRANTS Michael Galateanu until **March 24, 2026**, to file an amended complaint as described above; and

(2) **CAUTIONS** Michael Galateanu if he doesn't do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on February 23, 2026.

s/ Holly A. Brady  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT
